Case 4:19-cv-04240   Document 30   Filed on 09/21/20 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
September 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLARENCE MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-04240 |
| | § | |
| NORTHWEST HARRIS COUNTY MUD NO. 24, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the defendant's, Northwest Harris County MUD No. 24 (the "District"), motion to dismiss (Dkt. No. 23) pursuant to Rule 12(h)(3). The plaintiff, Clarence Miller, has filed a response in opposition to the defendant's motion. (Dkt. No. 27). After having carefully considered the motion, response, reply, and the applicable law, the Court determines that the defendant's motion to dismiss should be **DENIED**.

**II.   FACTUAL BACKGROUND**

The District is a municipal utility district ("MUD") located in Harris County, Texas. The District is a political subdivision of the State of Texas, authorized by the Texas Commission of Environmental Quality ("TCEQ") to provide water, sewage, drainage, and other utility-related services within its geographic boundaries. Between 2012 and September 28, 2019, Miller was employed by the District as a general manager.[1] During his employment, Miller's responsibilities as general manager included keeping record of all the District's ongoing projects and events, scheduling and attending all such events, preparing written reports, and purchasing supplies.

---

[1] It is unclear from the pleadings whether Miller is still employed by the District as general manager. Miller alleges that he currently serves on the District's board of directors, which the District denies.

Miller has sued the District under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (the "FLSA" or the "Act"), alleging that the District violated the Act's overtime pay provisions with respect his pay during the latter period of his employment. Specifically, Miller alleges that between January 1, 2016 and September 28, 2019, the District misclassified him as a non-exempt employee under the FLSA and that during this time he regularly worked between 20 and 30 hours of uncompensated overtime each week.

The District now moves to dismiss Miller's suit for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(h)(3).

## III. CONTENTIONS OF THE PARTIES

In its motion to dismiss, the District argues that, per *Alden v. Maine*, it retains sovereign immunity from suit in federal court under the Eleventh Amendment. *See* 527 U.S. 706, 756 (1999). The District argues that, as a political subdivision of the State of Texas, it shares in the state's sovereign immunity.

Miller responds that "governmental immunity" does not apply to the District because Miller's FLSA claim arises from the District's performance of a proprietary—rather than a governmental—function, *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 145 (Tex. 2018).

The parties agree that the District operates pursuant to Chapters 49 and 54 of the Texas Water Code, as amended (the "Code").

## IV. STANDARD OF REVIEW

### A.   Standard Under Rule 12(h)(3)

"If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3rd Cir. 1992) (citing *Rubin v. Buckman*, 727 F.2d 71, 72 (3d

Cir. 1984)) (reasoning that "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party."). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g.*, *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008)).

Where a defendant makes a "facial"—rather than a "factual"—jurisdictional attack on the plaintiff's complaint, the court is merely required to assess the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true. *Cell Science Sys. Corp. v. Louisiana Health Serv.*, 804 Fed. App'x 260, 264 (5th Cir. 2020). A defendant makes a facial attack by merely filing a motion to dismiss without providing affidavits, testimony, and other evidentiary materials challenging the court's jurisdiction. *Id.*

IV.     **ANALYSIS AND DISCUSSION**

Applying this Circuit's precedents, this Court finds that the District is not an "arm of the State" that would be entitled to Eleventh Amendment immunity. Whether a division of state government is protected by Eleventh Amendment immunity is a question of federal law. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). A federal court may look to state law to inform its determination of jurisdiction. *Id.* A state's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the "alter ego" or an "arm" of the State. *Vogt v. Bd. of Comm'rs*, 294 F.3d 684,

688–89 (5th Cir. 2002). However, political subdivisions of states are generally not entitled to Eleventh Amendment immunity. *Stratta v. Roe*, 961 F.3d 340, 351 (5th Cir. 2020); *Black v. North Panola School Dist.*, 461 F.3d 584, 594 (5th Cir. 2006) ("Eleventh Amendment immunity does not extend to suits prosecuted against municipalities or other governmental entities that are not considered arms of the State.").

The courts of this Circuit examine six factors to determine whether a political entity is an "arm of the State" for purposes of Eleventh Amendment immunity: (1) whether the state statutes and case law view the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Stratta*, 961 F.3d at 350 (citing *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986)). "While no one factor is dispositive, the second *Clark* factor—the source of the entity's funding—is the weightiest factor because the Eleventh Amendment exists mainly to protect state treasuries." *Id.* (internal citations and quotations omitted).

### A. Degree of Autonomy

Applying the *Clark* factors to the present facts, this Court determines that only the third factor—the degree of local autonomy the entity enjoys—weighs in favor of the District's argument that it is an arm of the State. The TCEQ exercises significant control over the District's operations and activities. It must approve any bonds issued by the District to fund District projects. 30 Tex. Admin. Code §§ 293.1, 293.41. It also must approve the District's *use* of certain kinds of funds, such as surplus bond funds or proceeds from the sale of property originally acquired with bond proceeds. *Id.* § 293.83. Importantly, the District is "subject to the

continuing right of supervision of the State of Texas," through the TCEQ, which has the authority to evaluate the District's board of directors, require audits and other reporting, institute investigations and hearings, and issue rules "necessary to supervise" the District. *Id.* § 293.3. Finally, projects undertaken by the District must conform to TCEQ regulations pertaining to contracting, bidding, change orders, and acceptance of work. 30 Tex. Admin. Code §§ 293.62–.70; 293.81–82.

### B. Characterization of the District by State Law and Case Law

The District's status as a political subdivision of the State of Texas weighs strongly against Eleventh Amendment immunity. A municipal utility district (MUD) is a political subdivision of the State of Texas created pursuant to Article XVI, Section 59 of the Texas Constitution. *See* Tex. Water Code § 54.011 (citing Tex. Const. art. XVI, § 59);[2] *McMillan v. Nw. Harris Cnty. Mun. Utility Dist. No. 24*, 988 S.W.2d 337, 340–41 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). The Fifth Circuit recently held that a groundwater conservation district, created pursuant to the same constitutional provision, was a political subdivision rather than a state agency. *Stratta*, 961 F.3d at 351 (citing *Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980) (involving a navigation district) and *Lewis Cox & Sons, Inc. v. High Plains Underground Water Conserv. Dist. No. 1*, 538 S.W.2d 659, 662 (Tex. Civ. App.—Amarillo 1976, writ ref'd n.r.e.) (involving an underground water conservation district)). Noting that political subdivisions of States are generally "not entitled to Eleventh Amendment immunity," the Court in *Stratta* reaffirmed that political subdivisions "stand on the same footing" as counties, which are not entitled to Eleventh Amendment immunity. *Id.* at 352.

---

[2] The term "district," as used Chapters 49 and 54 of the Code, refers to and includes municipal utility districts. Tex. Water Code § 49.001(a) (defining "district" to include "any district or authority created by authority of . . . Section 59, Article XVI, Texas Constitution"); *id.* § 54.001(1) (defining "district" as "a municipal utility district operating under" Chapter 54 of the Code).

### C. The Source of Funds for the District

As noted, the second *Clark* factor—the source of funds for the District—is the most important factor in the Eleventh Amendment analysis. *Stratta*, 961 F.3d at 350. The relevant inquiry is "first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state's liability for the defendant's general debts and obligations." *Hudson v. City of New Orleans*, 174 F.3d 677, 687 (5th Cir. 1999). "The state's liability for a judgment is often measurable by a state's statutes regarding indemnification and assumption of debts." *Vogt v. Bd. of Comm'rs*, 294 F.3d 684, 693 (5th Cir. 2002).

Chapters 49 and 54 of Code do not render the State of Texas liable for judgments against MUDs or their general debts and obligations. To the contrary, the Code provides that "[a]ny court in the state rendering judgment for debt against a district may order the board to levy, assess, and collect taxes or assessments to pay the judgment." Tex. Water Code § 49.066(b). *See also* Tex. Water Code §§ 54.501–.522, 54.601–604 (authorizing a MUD to issue bonds and assess annual ad valorem taxes on land located within its boundaries). While the TCEQ must generally approve the District's issuance of such bonds, the approval requirement does not make the District dependent on state funds to pay judgments or other obligations. *See Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147–48 (5th Cir. 1991) ("[T]he most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds."). Accordingly, the second and most important factor weighs against Eleventh Amendment immunity.

### D. Concern with Local or Statewide Problems

The inquiry into whether the District is concerned primarily with local or statewide problems is "largely geographic." *Stratta*, 961 F.3d at 355. The petition to create a MUD, which must be submitted to the TCEQ for approval, must define its geographic area. *Id.* §§ 54.014–.015. The District's purposes largely involve the use and control of natural resources located within its boundaries. *See, e.g.*, Tex. Water Code § 54.012. Such purposes include: "the control . . . of *its* [the district's] floodwater" and "the water of *its* rivers and streams"; the reclamation and drainage or irrigation of "*its* land"; "the conservation and development of *its* forests, water, and hydroelectric power"; and "the navigation of *its* inland and coastal water." *Id.* (emphasis added). Moreover, the burden of funding the District's projects falls specifically on the District's residents. Tex. Water Code § 54.601 (providing that the board of directors shall, upon issuing bonds payable from taxes, levy an annual ad valorem tax on "all taxable property *within the district*" (emphasis added)); *id.* § 54.505 (bonds funded by ad valorem tax revenues must be approved "by a majority vote of *the resident electors of the district*" (emphasis added)). The fourth factor, therefore, also weighs against Eleventh Amendment immunity.

### E. Remaining Factors

The Code grants the District authority to sue and be sued in its own name (the fifth factor) and the right to hold and use property (the sixth factor). *See* Tex. Water Code § 49.066(a) (providing that a "a district may sue and be sued in the courts of this state in the name of the district by and through its board"); *id.* § 49.218 (granting the right to acquire property "considered necessary for the purpose of accomplishing any one or more of the district's . . . purposes provided in this code or in any other law"). Additionally, the fifth and sixth *Clark* factors weigh against Eleventh Amendment immunity. *Stratta*, 961 F.3d at 356.

## V. CONCLUSION

In sum, five of the six *Clark* factors—including the second and most important factor—weigh against finding that the District is an arm of the State for which Eleventh Amendment immunity would be appropriate. Based on the foregoing, the defendant's motion to dismiss is **DENIED**.

It is so **ORDERED**.

SIGNED on this 21st day of September, 2020.

          Kenneth M. Hoyt
          United States District Judge